IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

GORDON H. TJADEN, )
and CANDY L. TJADEN, )
 )
Plaintiffs, ) TC-MD 170058R
 )
v. )
 )
DEPARTMENT OF REVENUE, )
State of Oregon, )
 )
Defendant. ) **FINAL DECISION**[1]

Plaintiffs appeal Defendant's Notice of Assessment, dated November 15, 2016, for the

2013 tax year. A trial was held on December 5, 2017, in the Oregon Tax Court, Salem, Oregon.

Candy L. Tjaden (Tjaden) appeared and testified on behalf of Plaintiffs. Charles Randle

appeared and testified on behalf of Defendant. Plaintiffs' Exhibits 1 to 16 and 18 were admitted

into evidence without objection. Defendant's Exhibits A to N and P to W were admitted into

evidence without objection. Defendant's Exhibit O was admitted into evidence over Plaintiffs'

objection.

## I. STATEMENT OF FACTS

Income tax cases generally come to the Tax Court having been first reviewed by an

auditor and, in some cases, after additional review by a conference officer. That process often

educates the taxpayer on the issues and law and can help narrow the scope of appeal. This case

is different because Plaintiffs did not provide documents in the audit, even when given a second

chance to do so. As a result, the evidence presented was not limited in scope and consists of

---

[1] This Final Decision incorporates without change the court's Decision, entered May 16, 2018. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

thousands of individual items which are too numerous to detail in a statement of facts. Even if the facts were fully recounted, it would not be helpful to the Plaintiffs, the public, or the bar. Thus, the court will provide a general statement of facts in this section, and include more detailed facts in the analysis section where necessary.

Tjaden testified she has been a daycare provider for 23 years. A majority of her clients are single mothers who have been through extraordinary circumstances. Tjaden testified that she has a passion for helping families to get back on their feet, and often helps them with gas money or school supplies. She testified that she is not adept at keeping track of expenses, so she employed a methodology of taking her expenses and then reducing the amount claimed on her tax return by a variable percentage to allow room for error in case of an audit.

During the tax year at issue, Tjaden operated her daycare out of her home which was owned by her mother-in-law. Tjaden usually had six to 10 kids at any one time. She testified that she used practically all of her home and was available almost 24 hours a day. Most of the children were on a reduced rate paid by the Department of Human Services (DHS). Parents were responsible for the amounts not paid by DHS, but Tjaden did not always receive those amounts.

Tjaden testified that she used a Suburban to transport children to and from school, to home, and for field trips. She did not keep track of her trips or mileage. Instead, she kept receipts for gas purchases and other items related to the car.

Tjaden stated she once went to a seminar where the speaker proposed that using cash for everything was a good financial tool. Following this advice, Tjaden cashed most of her checks from DHS and mainly used cash for purchases. She kept no record of the cash other than what appears on receipts presented into evidence. Tjaden's lack of financial organization often resulted in bounced checks and extraordinary bank fees. She often resorted to short-term payday

loans and other such devices to cover her expenses. Receipts for purchases for the daycare were commingled with personal expenses on almost every receipt. Occasionally, a receipt would contain a mark or notation which Tjaden indicated represented the item was or was not a business expense.

Randle testified that has been an auditor for Defendant for three-and-a-half years and focuses on small business. He testified that Plaintiffs were initially represented in the audit, but the audit was closed and Defendant issued a Notice of Deficiency when Plaintiffs did not submit any documents. Defendant reopened the audit after Plaintiffs filed an objection, but the audit was reclosed when again no documents were provided.

Randle testified that the summary expense sheets submitted by Plaintiffs were not reliable and that gross receipts could not be verified because business expenses were mostly done in cash. He attempted to perform a bank analysis for Plaintiffs but was unable to do so because of the disorganized nature of the records and because there was evidence of missing bank accounts. He testified that Plaintiffs' childcare attendance log contained suspicious corrections and were not accurate. In sum, Randle testified that none of the childcare expenses should be allowed due to a lack of substantiation.

## II. ANALYSIS

In analyzing Oregon income tax cases this court starts with several general guidelines. First, the court is guided by the intent of the legislature is to make Oregon's "personal income tax law identical in effect" to the federal Internal Revenue Code (IRC) for the purpose of determining taxable income of individuals, where possible. ORS 316.007.[2] The legislature adopted, by reference, the federal definition for deductions, including those allowed under

---

[2] References to the Oregon Revised Statutes (ORS) are to 2011.

section 162 of the IRC for trade and business expenses. The Code allows a deduction for "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." IRC § 162(a). Taxpayers are not allowed a deduction for personal, living, or family expenses except where specifically allowed in the code. IRC § 262(a).

Second, in cases before the Tax Court, the party seeking affirmative relief bears the burden of proof and must establish his or her case by a "preponderance of the evidence." ORS 305.427. Third, allowable deductions from taxable income are a "matter of legislative grace" and the burden of proof (substantiation) is placed on the individual claiming the deduction. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992).

Tjaden operates a daycare business out of her home. Because of the nature of Tjaden's business and her accounting methodology, her family and business expenditures, such as grocery items, are inexorably commingled. Congress enacted special laws for daycare and similar businesses to alleviate some of the strictness applied for expenses related to use of a home which may be both business and personal. Under IRC section 280A(c)(4), Tjaden's business expenses must be classified as direct or indirect. Direct business expenses, if substantiated, can be deducted at 100 percent because they are of no personal benefit and are, deductible under IRC section 162. Indirect business expenses are those that benefit both the business and the home. Indirect expenses will be allocated by a formula which reduces the deduction by the square footage of her home used for business and hours for which that square footage is regularly employed for business purposes. IRC section 280A(c)(4)(C) states:

> "If a portion of the taxpayer's dwelling unit used for the purposes described in subparagraph (A) is not used exclusively for those purposes, the amount of the expenses attributable to that portion shall not exceed an amount which bears the same ratio to the total amount of the items allocable to such portion as the number of hours the portion is used for such purposes bears to the number of hours the portion is available for use."

In determining business percentage, there are two elements: the space percentage and the time percentage. The space percentage consists of the area regularly used for business (numerator) divided by the area of the complete home (denominator). The time percentage is the total number of hours the facility was used for child care during the year (numerator) divided by the total hours in the year (8,760 hours). The two percentages are multiplied by each other to get the business percentage. (See IRS Form 8829.) Tjaden calculated her home ratio at 87 percent based on child care consisting of 7,655 hours out of a total possible of 8,760 hours for the year and used that to reduce some of her deductions. However, Tjaden used only the time percentage and not the space percentage. Tjaden testified and presented a diagram to show that 1,391 square feet of her home (including garage and storage) was used for day care out of a total of 1,691 square feet. (Ptfs' Ex 1.) The resulting calculation of 82 percent must be multiplied by 87 percent of time used to obtain the result of 71 percent. This is the amount which should be used as the business percentage where the expense is indirect.

One final notation about the evidence provided by Plaintiffs before addressing the individual expense categories. Tjaden relied heavily on Quicken summary pages as proof of expenses. Summaries of this type are seldom viewed by the court as conclusive evidence of an expense. This is especially true, when as is the case here, the summaries are not corroborated by receipts or bank statements. Thus, the court gave no evidentiary weight to any of Plaintiffs' expense summaries.

A.     *Returns and Allowances*

Tjaden took a deduction of $4,200 for returns and allowances. She testified that portions of her bills that were not paid by DHS were the responsibility of the children's parents. In some

/ / /

cases, the parent did not, or was unable to, pay the balance. In those instances, Tjaden took a deduction for the amount that was not paid. Defendant denied the deduction. (Def's Ex B at 3.)

Plaintiffs' legal theory for the deduction is absolutely incorrect. A business is not eligible for a deduction for services rendered and billed, but unpaid. Consequently, Plaintiffs deductions for this category must be denied.

B.    *Car and truck expenses*

Tjaden claimed $5,387 in car and truck expenses using the actual cost method. (Def's Ex I at 7.) Tjaden used her Suburban to transport the children in her care from school to home, and on field trips. Tjaden did not keep a contemporaneous log of her transportation miles. Rather, she submitted a Quicken ledger that listed dates she purchased fuel, a few random receipts, and copies of pages of her bank account showing debit card purchases at gas stations. (Ptfs' Ex 3.) Tjaden also claimed deductions for auto insurance, interest on a car loan, and for maintenance and repairs. (Ptfs' Ex 4.) However, for those she provided only random bank account postings without any actual receipts. Tjaden testified that she had insurance on multiple cars in the household, including for her two children. She did not provide a bill from her auto insurance carrier and offered no breakdown of those expenses. Tjaden testified she took a loan out on her car, which was paid off, to use in her business. No information was presented on the specific use of those funds. Tjaden presented a series of receipts for auto repair and maintenance; such as specialized cleaning supplies. (Ptfs' Ex 5.) The receipts do not readily show the connection to the business.

While all tax deductions require proof, there are more stringent rules for travel related expenses. IRC section 274(d) provides that no deduction is allowable under section 162 for any traveling expenses unless the taxpayer complies with strict substantiation rules. IRC § 274(d)(1),

(4). A taxpayer must substantiate the amount, time, place, and business purpose of the expenses by adequate records or by sufficient evidence corroborating his or her own statement. IRC § 274(d)(4); Treas Reg § 1.274–5T(b)(2), (c). "Although a contemporaneous log is not required, corroborative evidence to support a taxpayer's reconstruction of the elements * * * of the expenditure or use must have a high degree of probative value to elevate such statement to the level of credibility of a contemporaneous record." *Christine v. Comm'r*, TCM 2010-144, WL 2640125 at *3 (2010), citing Treas Reg §1.274-5T(c)(1).

The court does not dispute that Tjaden traveled as part of her daycare business. However, she provided insufficient information upon which the court could ascertain the destination, frequency, or purposes of the trips. A taxpayer may not ignore substantiation requirements under IRC section 274(d). Therefore, she is not allowed any deduction for travel or vehicle expenses.

C.      *Loan Interest*

Tjaden testified that she extensively used payday and other types of short term loans to solve cash flow issues. Business interest expense is potentially deductible, but only in a very few instances may personal interest payments be deducted (e.g. home mortgage interest, student loan interest). The evidence in this case does not readily show that Plaintiffs' loans were exclusively for business. The court is unable to discern Plaintiffs' use of these loans for personal reasons from those of the business. Therefore, the deduction for loan interest must be denied.

D.      *Subcontractors*

Tjaden took a deduction of $3,800 for payments for subcontractor services in cleaning and outdoor maintenance of her home. IRC section 162(a)(1) allows a business expense deduction for "a reasonable allowance for salaries or other compensation for personal services

actually rendered." Tjaden's summary record lists 14 individuals were paid less than $600 each during the tax year. She testified that she paid in cash and did not issue any 1099 forms. She did not record the hours worked. IRC section 6001 requires that taxpayers keep "records showing that a person is entitled to deduct, credit, or recapitalize basis in, items claimed in calculating tax liability. One of the elements showing entitlement to a deduction, credit, or basis is proof of payment of an amount." Rev Proc 92-71, 1992-35 IRB 17. The court finds that Tjaden's summary ledger records are insufficient evidence and are not reliable because they do not match any of her bank records. She has no proof of hours worked, what the individuals did and at what rate, and no receipts showing actual payment. She may well have incurred the expenses claimed; however, because Tjaden lacked adequate records, Plaintiffs are not entitled to a deduction for subcontractors.

E.    *Rental payments*

Tjaden deducted $7,200 as rent payments. Rent is often a valid business expense under IRC section 162. If proved, the court would use the allocation formula to determine business use percentage of her home. However, the only evidence presented here was a barely legible copy of a rental agreement. (Ptfs' Ex 8.) No evidence was presented to show that any rental payments were actually made. A review of Plaintiffs' bank records submitted into evidence does not show any payments for rent, or amounts taken in cash to pay rent. One might assume that it is axiomatic that rent must have been paid; however, here the property is owned by Tjaden's mother-in-law. Because no evidence of payment was provided, the deduction must be denied.

F.    *Office Expense*

Tjaden claims a deduction in the amount of $3,800 for office expense. These expenses are further broken down and analyzed separately.

1. *Advance fees/check cashing fees*

Tjaden deducted fees for cash or payroll advances and check cashing fees. As discussed above, she has not demonstrated they were an ordinary and necessary business expenses rather than personal expenses. Therefore, no deduction is allowed.

2. *Union dues*

Tjaden provided evidence that union dues were taken from her DHS payments. (Ptfs' Ex 9 at 15–24.) This is an ordinary business expense and a deduction for union dues in the amount of $312 is allowed.

3. *Veterinary expense*

Tjaden seeks a deduction for euthanizing her dog in the amount of $76. To deduct this expense, the animal must have been in home as an "ordinary and necessary" expense. IRC §162. Tjaden testified that she used the dog for science education and that it benefited the children. While Tjaden's testimony was persuasive, the dog both benefited her business and her home personally. Thus, the deduction is allowed subject to the allocation of the home ratio which reduces the deduction to $54. (*accord*, *Hansen v. Dept. of Rev.*, TC-MD 081122D WL 3089297 at *14 (Or Tax M Div Sept. 29, 2009).

4. *Payments to Ashley Feliciano and Emily Bojorcas*

Tjaden presented hand-written notes that she paid $200 to Ashley Feliciano on June 15, 2013, and $200 on December 15, 2013, and $500 to Emily Bojorcas over several dates. (Ptfs' Ex 9 at 26–27; 33, 35–36.) As explained in the subcontractors section above, this expense lacks the necessary elements of substantiation. Thus, no deduction is allowed.

/ / /

/ / /

5. *CCI Salem*

Tjaden testified that a credit card payment to CCI Salem in the amount of $51.45 was for a continuing education class. (Ptfs' Ex 9 at 28.) Because Tjaden is required to required take continuing education classes to maintain her daycare license, the amount is an allowable business expense.

6. *Costco membership*

Tjaden seeks to deduct $55 for her Costco club membership. In reviewing Plaintiffs' Costco receipts, it is unclear whether her purchases were exclusively for business. Rather, the purchases appear to be both personal and for her daycare. No attempt by Plaintiffs was made to allocate between the two purposes. Therefore, this deduction must be denied for lack of substantiation.

7. *Quicken*

Tjaden seeks a deduction of $21 for charges related to using the program Quicken to link to her checking account. It appears that Tjaden was using this service in an attempt to keep track of business expenses. This expense is an ordinary and necessary business expense and is allowed.

8. *Miscellaneous supplies*

Tjaden seeks a deduction for a number of miscellaneous supplies. The court allows the following: paper in the amount of $5.49 and post office expenses of $38.92. (Ptfs' Ex 9 at 46 and 48–50.) The remainder of deductions for supplies is denied due to lack of substantiation.

G. *Home Repairs*

Tjaden deducted $2,000 for home repairs. She testified that the children in her care often damaged her home. In support of that deduction she submitted a disorganized jumble of

receipts, including multiple items such as food and personal care items. The court reviewed the items contained in Plaintiffs' receipts and, to the extent the item was legible and readily appeared to be repair-related, the items were allowed, subject to the home allocation percentage. The amounts and locations are listed in the spreadsheet below:

| Exhibit | Amount |
|---|---|
| 10 at 11 | $5.99 |
| 10 at 11 | $5.99 |
| 10 at 11 | $9.97 |
| 10 at 11 | $72.00 |
| 10 at 13 | $39.99 |
| 10 at 14 | $8.12 |
| 10 at 16 | $10.14 |
| 10 at 16 | $89.00 |
| 10 at 17 | $22.76 |
| 10 at 18 | $12.20 |
| 10 at 20 | $19.99 |
| 10 at 21 | $19.53 |
| 10 at 21 | $4.56 |
| 10 at 22 | $68.00 |
| 10 at 30 | $9.58 |
| 10 at 31 | $1.40 |
| 10 at 31 | $11.09 |
| 10 at 32 | $14.69 |
| | TOTAL: $425.00 |

The amount allowed for home repair benefitted Plaintiffs' home and their business and thus are reduced by the home percentage ratio to $301.75.

H.    *Supplies*

Tjaden deducted $8,000 for supplies. Tjaden presented numerous receipts with hundreds of individual items. Many receipts were illegible and most items did not have sufficient description to ascertain their business purpose. Many were food items that the court is allowing elsewhere and thus those expenses will not be allowed here. The court employed the same methodology as above and presents its conclusions in the below spreadsheet.

| Exhibit | Amount |
|---|---|
| 11 at 8 | $30.27 |
| 11 at 17 | $24.99 |
| 11 at 22 | $7.99 |
| 11 at 45 | $6.47 |
| 11 at 55 | $0.97 |
| TOTAL: $70.69 | |

I.      Utilities

Although Plaintiffs' receipts were somewhat disorganized, the court finds proof of

payments contained in Exhibit 13 as follows:

| PGE | | City of Lafayette | | Verizon Wireless | | Comcast | | Western Waste | |
|---|---|---|---|---|---|---|---|---|---|
| Ex | Amt | Ex | Amt | Ex | Amt | Ex | Amt | Ex | Amt |
| 13 at 3 | $160.00 | 13 at 4 | $416.36 | 13 at 5 | $336.00 | 13 at 5 | $233.21 | 13 at 10 | $247.04 |
| 13 at 9 | $385.00 | 13 at 15* | $310.00 | 13 at 5 | $335.00 | 13 at 6 | $338.59 | 13 at 19 | $89.32 |
| 13 at 12 | $375.00 | 13 at 25 | $297.16 | 13 at 7 | $333.05 | 13 at 8 | $365.00 | 13 at 20 | $68.00 |
| 13 at 16 | $430.00 | | | 13 at 11 | $400.00 | 13 at 14 | $179.07 | | |
| 13 at 21 | $236.00 | | | 13 at 14 | $350.00 | 13 at 17 | $183.05 | | |
| 13 at 26 | $300.00 | | | 13 at 18 | $310.00 | 13 at 19 | $207.67 | | |
| | | | | 13 at 19 | $340.00 | 13 at 21 | $212.02 | | |
| | | | | 13 at 21 | $333.25 | 13 at 23 | $189.85 | | |
| | | | | 13 at 26 | $209.84 | 13 at 26 | $211.86 | | |
| | | | | 13 at 27 | $200.00 | | | | |
| TOTAL: $1,886.00 | | TOTAL: $1,023.52 | | TOTAL: $3,147.14 | | TOTAL: $2,120.32 | | TOTAL: $404.36 | |
| *Copy of check with no account number or bank statement is insufficient evidence | | | | | | | | | |

1.      *PGE, City of Lafayette and Western Waste*

Tjaden has supplied evidence of payment to PGE for electricity, to the City of Lafayette

for water, and to Western Waste for garbage.  Those expenses appear to be to ordinary and

necessary business expenses. Since those expenses also benefitted the home, they are subject to the home ratio allocation. The amount of $3,313.88 is reduced by the allocation to $2,352.85.

2.     *Verizon Wireless*

Tjaden testified that she, her spouse, and her two children all have cell phones and she deducted the total for all phones. She testified that she used her cell phone for both daycare and personal use. Additionally, she testified that her spouse and children help out sometimes at the daycare, but acknowledged that the phones were also used for personal use.

As of 2010, cellular telephones were removed from the definition of "listed property" and are not subject to the strict substantiation requirements of IRC section 274(d). *See* Pub L 111-240, § 2043, 124 Stat 2560 (2010). As a consequence, it is possible for courts to estimate the amount of allowable deductions pursuant to the rule in *Cohan v. Comm'r*, 39 F2d 540 (2d Cir 1930). Such estimation is only possible if there is a basis in the record from which a court can reasonably apportion business and personal use. *Vanicek v. Comm'r*, 85 TC 731, 742–43. Thus, an apportioned amount of cell phone expenses can be deduced even if the taxpayer uses the cell phone for both business and personal use. Clearly, Plaintiffs are not entitled to deduct the full amount of their family cell phone expense, when three out of the four family members only occasionally assist in the daycare business. From the evidence presented, however, the court is unable to even estimate what portion of Plaintiffs' cell phone expense is for business. Thus, the deduction for cell phone service is denied for lack of substantiation.

3.     *Comcast*

Tjaden testified that she subscribes to Comcast for a fax line she uses for business, for internet so kids can do homework, and for cable television to entertain the children. Since those

/ / /

expenses are also used by the home, they are allowed, but subject to the home ratio allocation. The amount allowed is $1,505.43.

J.    *Meals*

IRC section 162 allows a deduction for food provided to the daycare recipients. This amount is not limited by the 50% reduction imposed under IRS section 274(n). But under IRC Section 262, no portion of the cost of food for the provider's family is allowed as a deduction. Food expenses must be substantiated. See IRC § 6001 and Treas Reg § 1.6001-1(a). According to IRS pub. 587 (2013), taxpayers who provide food for daycare recipients may deduct the actual cost of food provided to the children or use a standard meal and snack rate for the year. See Rev. Pro 2003-22 (2/24/2003). For the 2013 tax year the rates were $1.27 for breakfast, $2.38 for lunch/dinner, and $0.71 for snacks. (2013 IRS pub 587.) Tjaden appears to have used both actual costs and the standard rate, in error. Tjaden's receipts are haphazard, include food clearly not for her daycare clients (*e.g.*, energy drinks) and she did not distinguish between personal and business food. She did provide a year-end meal tally showing the number of meals and snacks provided to the children. Because the actual cost of the food is uncertain, the court will use the standard rate to determine the deduction. The following table is based on Plaintiffs' meal records (Ptfs' Ex 14.):

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

| Daycare meals | | | | |
|---|---|---|---|---|
| Month | Breakfasts | Lunches | Dinners | Snacks |
| January | 202 | 139 | 202 | 606 |
| February | 202 | 142 | 202 | 606 |
| March | 225 | 186 | 181 | 631 |
| April | 161 | 190 | 224 | 587 |
| May | 233 | 149 | 233 | 690 |
| June | 178 | 140 | 178 | 534 |
| July | 172 | 172 | 172 | 513 |
| August | 212 | 212 | 212 | 636 |
| September | 158 | 188 | 177 | 531 |
| October | 221 | 138 | 221 | 663 |
| November | 226 | 162 | 226 | 678 |
| December | 175 | 218 | 229 | 681 |
|  | 2,365 | 2,036 | 2,457 | 7,356 |
| Rate | $1.27 | $2.38 | $2.38 | $0.71 |
| Totals | $3,003.55 | $4,845.68 | $5,847.66 | $5,222.76 |
| Grand Total: $18,919.65 | | | | |

Based on the table above, Plaintiffs are allowed $18,919.65 for food expense.

K.    *Fees and Charges*

Tjaden seeks to deduct $3,900 for fees and charges. These were related to a significant number of nonsufficient funds fees, overdraft fees, check cashing fees, and fees for using ATMs where she did not have an account with the banking institution. As described in the loan interest section above, these are personal expenses. As such, they may not be deducted as a business expense.

L.    *Gifts*

Tjaden seeks a deduction in the amount of $1,000 for gifts given to her clients.  IRC section 274(b)(1) limits deduction for "any expense for gifts made directly or indirectly to any individual to the extent that such expense, when added to prior expenses of the taxpayer for gifts made to such individual during the same taxable year, exceeds $25."  Here the strict substantiation rules of IRC section 274(d) apply.  A taxpayer who claims a deduction for a business gift is required to substantiate it with adequate records or sufficient evidence corroborating his or her own testimony as to (1) the cost of the gift; (2) the date and description of the gift; (3) the business purpose of the gift; and (4) the business relationship of the person receiving the gift.  Treas Reg 1.274-5T(b)(5).

Tjaden provided a number of receipts for gifts which were in excess of $25.  Many of the receipts did not contain a description.  No evidence was given as to the date of any gift or the recipient.  While Tjaden might have been able to deduct up to $25 per client, the court has no way to determine how many clients received gifts.  Tjaden also submitted evidence of payments or donations to charitable organizations.  Those items are not deductible business gifts under IRC section 162, but may have constituted charitable donations under IRC section 170.  That category was not at issue for this appeal.  Based on the foregoing, Plaintiffs' deduction for gifts must be denied.

M.    *Field Trips*

Tjaden deducted $1,200 for field trips.  In support of the deduction, Tjaden presented a number of receipts for food, a number of bank statements showing debt card purchases for food, and a couple of receipts from the Dollar Tree store.  Tjaden testified that the kids loved field trips to the dollar store.

With respect to the food purchases, they are subject to the strict substantiation rules of IRC section 274(d). The receipts do not specify who was present, or if Plaintiffs consumed any of the purchased food. Deduction for the food items must be denied for lack of substantiation. As to purchases from the Dollar Tree, these appear to be purchases of potential supplies or they might have been gifts. The court is unsure of these items and Plaintiff did not provide an explanation. Thus, the deduction for field trips must be denied for lack of substantiation.

## III. CONCLUSION

After careful review of the evidence, the court concludes that Plaintiffs are entitled to business deductions in the amount of $23,633.23. Plaintiffs' remaining business deductions are not allowed. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs are entitled to a deduction for business expense related to their day care in the amount of $23,633.23.

Dated this ____ day of June 2018.

RICHARD DAVIS
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within 60 days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was signed by Magistrate Richard Davis and entered on June 1, 2018.*